UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 05-cv-02233-WYD

LINDA C. COCHRAN,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security[1],

    Defendant.

_____

**ORDER**
_____

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for Disability Insurance Benefits under the Social Security Act, 42 U.S.C. §§ 401-433. Plaintiff was born on March 9, 1953, and was 51 years old on the date of the ALJ's decision. (Tr. 55). Plaintiff alleges that she became disabled on July 6, 2001, due to back, shoulder and neck, and leg pain. (Tr. at 60). Plaintiff protectively filed her application in June of 2002. (Tr. 46-48). Plaintiff's application was initially denied. (Tr. at 55).

After a hearing (Tr. 273-317), the Administrative Law Judge ("ALJ") determined on November 15, 2004, that Plaintiff was not disabled because the ALJ found there were jobs which Plaintiff could perform that existed in the national economy. (Tr. 17).

---

[1] Michael J. Astrue, Commissioner of Social Security, has been substituted for former Commissioner Jo Anne B. Barnhart pursuant to FED. R. CIV. P. 25(d)(1).

The Appeals Council declined review of the ALJ's determination (Tr. 6-8), making it the Commissioner's final decision for purposes of judicial review.

## II.    THE ALJ'S DECISION

The ALJ's decision follows the five-part sequential analysis required by law. At step one, the ALJ found that "there are no indications that [Plaintiff] has engaged in substantial gainful activity after July 6, 2001." (Tr. at 17). At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine." *Id.* at 19. The ALJ found that Plaintiff's claims of episodes of dizziness, carpal tunnel syndrome, and foot impairment, were not severe impairments. *Id.* at 18-19. At step three, the ALJ found that Plaintiff "does not have impairments that meet the criteria of any of the listed impairments because the necessary clinical signs and diagnostic findings have not been established." *Id.* at 19.

The ALJ examined the medical evidence and assessed Plaintiff's residual functional capacity ("RFC"). Tr. at 21. Plaintiff was found to have the RFC:

> to perform light exertional work, with the restriction that she could only occasionally lift and carry up to fifteen pounds; that she would need to change position while seated every hour or two, to alleviate symptoms; with a restriction of no more than four hours of standing and walking in a regular eight hour workday, and for no more than thirty to forty minutes at a time; with no repetitive bending, squatting, kneeling, crawling, or climbing; no repetitive extended arm reaching; and no repetitive gripping/grasping with force. Light work normally involves lifting of no more than 20 pounds at a time, frequently lifting and carrying objects weighing up to 10 pounds, and may involve a good deal of standing and walking.

Tr. at 21.

In making this assessment, the ALJ considered Plaintiff's credibility. Tr. at 20. Because Plaintiff testified that she engaged in daily activities that were not limited to the extent one would expect, the ALJ found that the record as a whole did not support Plaintiff's testimony as to the symptoms and limitations of Plaintiff's impairments. *Id*. In weighing the medical evidence, the ALJ gave little weight to Plaintiff's treating physician and great weight to the consultative physician. *Id*.

The ALJ determined that Plaintiff could not perform her past work as a gambling dealer. (Tr. at 21). At step five, however, the ALJ went on to determine that there were other jobs in the national economy that Plaintiff could perform. *Id*. In making her determination, the ALJ considered the testimony of Ms. Dunne, a vocational expert ("VE") retained by the ALJ. *Id*. The ALJ found, based on the VEs' testimony, that Plaintiff was able to perform work as a furniture rental consultant, information clerk, and bakery worker. *Id*.

III.   ANALYSIS

   A.   Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d

802, 804 (10th Cir. 1988). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although the court should carefully examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.* As explained above, the Commissioner has established a five-step sequence for evaluating disability. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (discussing five-step analysis); 20 C.F.R. § 404.1520(b)-(f). If it is determined that a claimant is or is not disabled at any point in the analysis, the review stops. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799 (10th Cir. 1991).

First, the claimant must meet the threshold test by demonstrating that [s]he is not currently involved in any substantial, gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits his/her physical or mental ability to do basic work activities. *Id.,* § 404.1520(c). Third, if the impairment matches or is equivalent to established Listings, the claimant is judged conclusively disabled. *Id.*, § 404.1520(d). If the claimant's impairments are not equivalent to the Listings, the analysis proceeds to the fourth step. At this stage, the claimant must show the "impairment prevents him/[her] from performing work he has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted). If the claimant is able to perform his/her

previous work, [s]he is not disabled. If [s]he is not able to perform his previous work, the burden of proof shifts to the Commissioner to determine what work, if any, the claimant can do considering his/her residual functional capacity ("RFC"), age, education, and work experience. This burden is met if the decision is supported by substantial evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. Whether the ALJ Erred in the RFC Assessment

Plaintiff argues that the ALJ erred in connection with his assessment of her Residual Functional Capacity ("RFC"). More specifically, Plaintiff argues that the ALJ did not consider or weigh Dr. Robert McRoberts' opinion that Plaintiff was limited to part-time work and erred by characterizing Plaintiffs ability as "light exertional work." "The determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect her ability to perform work-related activities." *Young v. Barnhart*, No. 04-7076, 2005 WL 2605301, at *3 (10th Cir. 2005). "The final responsibility for determining RFC rests with the Commissioner, based upon all the evidence in the record, not only the relevant medical evidence." *Id.* However, it is axiomatic that all of the ALJ's required findings [including the RFC] must be supported by substantial evidence." *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999).

### 1. Dr. McRoberts' Assessment

I find, for the reasons stated below, that the ALJ did not properly weigh the medical evidence and the opinions of Dr. McRoberts. It is undisputed that Dr. McRoberts is a treating physician. (Def.'s Resp. at 2). According to the 'treating

physician rule', "the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)(citing 20 C.F.R. § 404.1527(d)(2)).  First, an ALJ must determine whether the opinion qualifies for 'controlling weight.'  *Id*.  To make this determination, the ALJ must:

> first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  If the answer is to this question is 'no,' then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  If the opinion is deficient in either of these respects, then it is not entitled to controlling weight.  *Id.*

"In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physicians opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*."  *Langley*, 373 F.3d at 1121 (emphasis in the original).

Plaintiff argues that the ALJ did not consider Dr. McRoberts' medical reports at all.  Defendant, on the other hand, cites to the decision which specifically refers to Dr. McRoberts' report in May of 2002.  While the ALJ does mention one of Dr. McRoberts' reports, I find that it is impossible to understand what weight, if any, the ALJ gave Dr. McRoberts' opinions from the ALJ's decision.

The one reference to Dr. McRoberts' findings in the ALJ's decision is as follows:

> By May 2002, the claimant had developed soreness and discomfort in her shoulders.  Her treating physician could not determine a reason for the discomfort, observing that she had exhibited full range of motion, and that she had no limitations or pain with range of motion testing.

-6-

This passage refers to the last recorded visit that Plaintiff had with Dr. McRoberts and only refers to her shoulder pain.  The bulk of Dr. McRoberts' findings, however, deal with Plaintiff's symptoms resulting from her lumbar and degenerative disc disease.  Tr. at 140-151.  Dr. McRoberts treated Plaintiff on nine different occasions, beginning in October 8, 2001 and ending in May 21, 2002.  In his Office Notes, Dr. McRoberts opined that Plaintiff was unable to work a full workday.  Tr. at 143.  Dr. McRoberts also opined that, at some point, Plaintiff would be placed on long-term disability.  Tr. at 141.

The ALJ's determination of Plaintiff's residual functional capacity did not include Dr. McRoberts' limitation of only working six hours per day and four days per week.  The ALJ did not give any reasons in the decision for rejecting Dr. McRoberts' assessment nor explain what weight she gave his assessment in determining Plaintiff's RFC.  Accordingly, I find that this case must be remanded and reconsidered by the ALJ.  Upon remand, the ALJ must properly weigh Dr. McRoberts' assessment of Plaintiff's limitations and/or develop the record on this issue.

> 2.   Whether the ALJ erred by Determining that Plaintiff had the Residual Functional Capacity to do Light Work as Opposed to Sedentary Work

Plaintiff also argues that the ALJ erred in deciding that she was able to perform "light exertional work."  As support for this argument, Plaintiff asserts that Dr. Campbell's assessment, at best, supports only a showing of sedentary work.  Defendant responds by arguing that the ALJ was entitled to accept only a portion of Dr. Campbell's functional assessment and that the "residual functional capacity is an 'administrative assessment' for the ALJ to determine."  (Def.'s Resp. at 12).  It is not

clear from the ALJ's decision whether or not the finding of "light exertional work" was a result of the ALJ only accepting part of Dr. Campbell's functional assessment, as Defendant argues, or a misapplication of this assessment to the Social Security Administrative regulations. Either way, I find that the ALJ erred by finding that Plaintiff had the ability to perform "light exertional work."

> The Social Security Administration Regulations define "light work" as follows:
>
> Light work involves lifting no more than 20 pounds at a time *with frequent lifting or carrying of objects weighing up to 10 pounds.* Even though the weight lifted may be very little, a job is in this category when it *requires a good deal of walking or standing*, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activites.

20 C.F.R. § 404.1567 (emphasis added). Dr. Campbell, on the other hand, found that Plaintiff "could manage 10-15 pounds occasionally. . . It would be difficult for her to lift and carry frequently due to the effect of repeated bending on the degenerative disc condition." Tr. at 243. "Walking and standing would be limited to. . . 3-4 hours total for a whole day." Tr. at 244. I find that Dr. Campbell's functional assessment is inconsistent with a finding that Plaintiff is able to perform "light exertional work."

"The ALJ may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability." *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *3 n. 2 (10th Cir. 2004). *See also Arrington v. Apfel*, No. 98-7099, 1999 WL 446013, at *8-9 (10th Cir. 1999) ('[i]n evaluating plaintiff's testimony and comparing it with 'prior statements and other evidence,' . . ., the ALJ was selectively choosing from the record those statements he wished to rely on without

properly considering all the evidence. . . . [w]e have repeatedly held that an ALJ may not engage in a selective evidentiary review") (citing cases); *Sherman v. Apfel*, No. 97-7085, 1998 WL 163355, at *5-6 (10th Cir. 1998).  In his decision, the ALJ explicitly stated that "the undersigned finds that [Dr. Campbell's] opinion is consistent with and well supported by the medical evidence as a whole, and gives it great weight." Nowhere in the ALJ's decision did she identify any basis for disregarding Dr. Campbell's functional assessment.

Accordingly, I find that the ALJ erred in finding that the Plaintiff had the ability to perform "light exertional work" as this finding is inconsistent with Dr. Campbell's functional assessment, which was given great weight by the ALJ.  On remand, the ALJ needs to address this issue.

### C. The Hypothetical Questions May Not Have Included All of Plaintiff's Impairments

Plaintiff also argues that the ALJ failed to meet her burden of establishing that Plaintiff could perform other jobs in the economy.  As grounds for this argument, Plaintiff asserts that the ALJ incorrectly summarized the consultative examiner's opinion when presenting the Vocational Expert with the hypothetical question. Therefore, Plaintiff argues that the Vocational Expert's testimony regarding Plaintiff's ability to perform work was not reliable.  Defendant argues that the hypothetical was based on the ALJ's RFC and, accordingly, was inclusive of all of Plaintiff's limitations.

Since the ALJ failed to properly weigh the treating and consulting physicians opinions, as explained above, the hypothetical question may not have included all of

the impairments. *See Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("'testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the . . . decision'") (quotation omitted). Accordingly, the ALJ's finding that Plaintiff was not disabled at step five based on the testimony of the vocational expert is not based on substantial evidence. This also requires reversal.

IV.   CONCLUSION

Based upon the foregoing, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner pursuant to 42 U.S.C. § 405(g).

Dated:  March 26, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge